ELMER P. KEEN, Plaintiff-Appellant, *v.* THE POLICE BOARD OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 77-1945

Opinion filed June 12, 1979.—Rehearing denied July 5, 1979.

---

Morris W. Ellis, of Chicago, for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Robert L. Thompson, Assistant Corporation Counsel, of counsel), for appellees.

Mr. JUSTICE DOWNING delivered the opinion of the court:

The Police Board of the City of Chicago (the Board) found that patrolman Elmer P. Keen violated rules of the Chicago Police Department and suspended him from the force for one year. Plaintiff Keen filed a complaint in the circuit court of Cook County to review the decision under the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 264 *et seq.*). Plaintiff appeals the trial court's affirmance of the Board's decision contending (1) that the Board's findings are against the manifest weight of the evidence; and (2) that Rule 2 of the Rules and Regulations of the Chicago Police Department is unconstitutionally vague and overbroad.

Tonne Poellnitz testified that on February 6, 1974, at approximately 3 a.m., she and a girl friend stopped at the Afro-Kingdom Chicken Shack on their way home from a dance. While there, she noticed the plaintiff escorting a man who appeared to be drunk out of the chicken place. She and her friend left the chicken place and while stopped at a traffic light, a City of Chicago police car driven by plaintiff pulled up alongside of them. Poellnitz recognized the plaintiff as the officer she had seen at the chicken place. According to Poellnitz, plaintiff motioned her to roll down her window and asked her where they were going. She told him they were going home. Plaintiff said he would follow if it was not too far.

Poellnitz testified that she lived in an apartment building located at 4834 South Vincennes Street; that after her girl friend stopped in front of the building to drop her off, plaintiff asked her to get into the squad car; and that he said he needed some information. Poellnitz got into the back seat of the squad car on the passenger side; plaintiff got into the front seat on the driver's side. Poellnitz stated that plaintiff told his partner to get into the car driven by her girl friend and the partner left. In accordance with plaintiff's request, Poellnitz said she wrote down her address and phone number for him; that plaintiff then put his hands on top of hers which were on the back of the front seat and asked if he and his partner could go up to her apartment; that she asked him what this was all about and he responded she knew and asked if she would be able to do him any good. Poellnitz told him she lived with her mother and that they could not. She said plaintiff then put one hand on her leg just above the knee and began rubbing it back and forth for about a minute; that she grabbed his hand and asked what he was doing; and that he responded she knew. Poellnitz stated that plaintiff did not actually touch her skin because she was wearing long pants.

Poellnitz testified that plaintiff then leaned over the front seat and pulled a bottle of Taylor's cream sherry which was in a paper bag from a box full of papers located on the back seat next to her, offered her some, and said he would bring it with him. She stated that neither she nor plaintiff drank any of the cream sherry and that plaintiff put the bottle back into the box. Poellnitz said that when plaintiff held the bottle up in front of her, she was able to read the label on the bottle and determine its contents to be red or pink in color. She told plaintiff she had to go and that her mother was looking out of the window; that if he let her out she might see him some other time; and that he asked her to promise and she agreed. She stated that plaintiff told her he wanted to walk her to the door and asked if she would be able to do him any good when they reached the hallway. She asked him what he meant and he said, "I put my hands on you, you put your hands on me and we do each other some good." She refused and proceeded into her apartment alone.

Noticing the number 21 on the front of the squad car, Poellnitz, later that same day, called the 21st Precinct to report the incident. She was told that plaintiff did not work there. After contacting the Afro-American Patrolmen's League and the Internal Affairs Department, she spoke with a Sergeant John Mahoney from the 21st Precinct and made arrangements to make a statement on February 23, 1974.

Selma Taylor testified that on February 6, 1974, at approximately 3 a.m., she was driving her friend, Tonne Poellnitz, home; that while stopped at a traffic light, plaintiff, whom she recognized as the officer who was patting down a man outside of the Afro-Kingdom Chicken Shack, pulled up alongside of them and said he would follow them home if it was not too far. She stated that after he stopped in front of Poellnitz's apartment building, the police officers turned their lights on them; that plaintiff got out of the squad car and then she and Poellnitz got out of her car; and that plaintiff told Poellnitz to get into the squad car because he wanted to get some information. She also heard plaintiff tell his partner to get into her car and be sociable. Taylor said that Poellnitz remained in the squad car for about five or 10 minutes and then went into her apartment building alone.

Officer Thomas Grzywacz testified that on February 6, 1974, when he and his partner, the plaintiff, drove past the Afro-Kingdom Chicken Shack, plaintiff observed a man entering the restaurant with what plaintiff believed to be a gun in his back pocket; that after stopping to investigate and taking care of the matter, he and plaintiff got back into the squad car and plaintiff mentioned something about following a car. Grzywacz stated that they followed a car to 48th and Vincennes Streets and stopped behind it. According to Grzywacz, plaintiff got out of the squad car as did the passenger of the car in front of them and the two engaged in

conversation. Grzywacz said that he did not know why plaintiff got out of the squad car nor could he hear what was said. Grzywacz stated that plaintiff then returned to the driver's seat of the squad car and the woman he was talking to got into the back seat of the squad car. Grzywacz said he complied with plaintiff's request that he go and talk to the woman's friend. After a few minutes Grzywacz noticed that plaintiff was in the car alone so he returned to the squad car. Grzywacz stated that he did not notice a bottle of alcohol in the squad car.

Sergeant John Mahoney testified that in February of 1974, he was assigned to the 21st Police District. A written statement he took from plaintiff was admitted into evidence in which plaintiff denied ever touching Poellnitz and denied transporting an alcoholic beverage in a police vehicle. A citywide district and area map was admitted into evidence for the purpose of informing the Board of the areas in certain police districts including the 21st District to which plaintiff testified he was assigned on February 6, 1974.

After his motion for a directed finding was denied, plaintiff testified that on February 6, 1974, after having searched a man in front of the Afro-Kingdom Chicken Shack, he and his partner were on their way back to the 21st District in order to return to their beat. While stopped at a traffic light, he noticed the car next to them was occupied by two black females whom he had seen leaving the chicken place. Plaintiff stated that Poellnitz, sitting on the passenger side of the car, asked if he and his partner wanted some chicken. She then asked if they would follow her home to assure her safe arrival. The officers followed the women to 48th and Vincennes Streets which plaintiff said was 2½ blocks from the 21st District. Plaintiff stated that Poellnitz got out of the car in which she was riding, walked back to the squad car, opened the door, asked if she could get in, and sat in the back seat on the passenger side. According to plaintiff, it was Poellnitz who asked his partner to go and sit in her girl friend's car. After plaintiff's partner left, Poellnitz told plaintiff that she and her friend had been at a dance, that she worked downtown, and that he should try to get in touch with her there at a later date. Plaintiff stated that the conversation lasted about five minutes and then he walked Poellnitz up to the apartment building and she went inside. Plaintiff denied ever touching her and denied there was a bottle of alcohol in the squad car.

Plaintiff testified that he had received numerous commendations for his police work, copies of which were admitted into evidence. He was also allowed to testify that his immediate supervisor would have testified that plaintiff was a good policeman, good worker, was on time and in proper uniform, and had been suspended only seven or eight days out of the 32 years he had been in the police department.

Based on this evidence, the Board made the following findings:

"5. The Respondent as charged herein, * * * is guilty of violating Rule 2, 'Any action or conduct which impedes the Department's efforts to achieve its goals, or brings discredit upon the Department,' as set forth in findings 6, 7 and 8 hereof, in that his conduct is not that which the Department expects from a reasonable, diligent, prudent and cautious officer.

6. The Respondent as charged herein, * * * is guilty of violating Rule 10, 'Inattention to duty,' in that on February 6, 1974, he remained outside his assigned beat and district (Beat #2123, i.e. patrol duty between 5700 South to 6100 South and Cottage Grove to Stoney Island; the 21st District) for no authorized purpose.

7. The Respondent as charged herein, * * * is guilty of violating Rule 14, 'Making a false report, written or oral,' in that he falsely asserted in a signed statement, given March 1, 1974 to Sergeant John J. Mahoney, Star #1617 (1) that he in fact never improperly touched complainant, and (2) that he in fact never transported an alcoholic beverage in a police vehicle.

8. The Respondent as charged herein, * * * is guilty of violating Rule 17, 'Drinking, alcoholic beverages while on duty or in uniform, or transporting alcoholic beverages on or in Department property, except in the performance of police duty,' in that he transported an alcoholic beverage, a bottle of Taylor's Cream Sherry in a Chicago Police Department vehicle on February 6, 1974."

Plaintiff had also been charged with a violation of Rule 8, "Disrespect to or maltreatment of any person, while on or off duty," but the Board found the evidence insufficient to sustain this charge.

## I.

■■ Plaintiff contends that the Board's findings are against the manifest weight of the evidence. Findings of an administrative agency on questions of fact are to be held prima facie true and correct. (Ill. Rev. Stat. 1975, ch. 110, par. 274.) In reviewing a decision of an administrative agency, this court is limited to a determination of whether or not there is evidentiary support for the agency's decision, and that decision may not be reversed unless it is against the manifest weight of the evidence. (*Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 358-59, 307 N.E.2d 371.) For a judgment to be against the manifest weight of the evidence, it must appear that opposite conclusions are clearly evident. (*Mobley v. Conlisk* (1st Dist. 1978), 59 Ill. App. 3d 1031, 1039, 376 N.E.2d 247.) That an opposite conclusion might be reasonable is not enough. (*Tinner v. Police Board* (1st Dist. 1978), 62 Ill. App. 3d 204, 208, 378 N.E.2d 1166.) If the

issue is merely one of conflicting testimony and credibility of a witness, the Board's determination should be sustained. *Ranquist v. Stackler* (1st Dist. 1977), 55 Ill. App. 3d 545, 557, 370 N.E.2d 1198.

## A.

■■ Plaintiff contends that the evidence does not support a finding that he violated Rule 10 which prohibits inattention to duty. He states that after searching a suspect outside the chicken place and while driving back to his beat, he encountered Poellnitz who asked him to follow her home to assure her safe arrival. After doing so, he had a short conversation with her and then immediately returned to his beat. This account of events obviously conflicts with the account testified to by Poellnitz. Such conflicts in testimony revolve around the credibility of the witnesses and are to be resolved by the agency who heard the evidence and observed the witnesses. (*Mobley v. Conlisk*, (1st Dist. 1978), 59 Ill. App. 3d 1031, 1040.) Plaintiff's argument must fail since the mere existence of conflicting testimony is not a sufficient basis to reverse the Board's decision as being against the manifest weight of the evidence. *Dante v. Police Board* (1st Dist. 1976), 43 Ill. App. 3d 499, 503, 357 N.E.2d 549.

Plaintiff contends that there is no evidence in the record defining the locality of his beat. He admits that a map showing the police districts was introduced into evidence, but argues that there was no foundation for its admission and he did not stipulate to its accuracy or authenticity.

■ Plaintiff testified that 4834 South Vincennes Street was 2½ blocks outside his district. He also stated that after leaving the chicken place, he was proceeding toward the 21st District in order to return to his beat. Thus regardless of the question of the map's authenticity, plaintiff's own testimony established that he was outside his assigned area when the incident occurred.

## B.

The Board found that plaintiff violated Rule 14 which prohibits making a false report written or oral, in that plaintiff denied improperly touching Poellnitz and denied transporting alcohol in a police vehicle in the signed statement he gave to Sergeant Mahoney. Plaintiff contends that the first part of this finding directly conflicts with the Board's finding that there was insufficient evidence to sustain the charge that plaintiff violated Rule 8 which prohibits disrespect or maltreatment of any person, while on or off duty.

The fact that the Board did not find sufficient evidence to support a violation of Rule 8 does not necessarily mean that it found an improper touching did not occur. It could mean that the touching was not serious enough to constitute "disrespect or maltreatment" in the Board's

interpretation of the rule. A finding on the basis that plaintiff falsely denied that he transported alcohol in department property could in itself support a violation of Rule 14.

Plaintiff contends, without citation of authority, that Rule 14 places an unconstitutional burden upon a police officer in that it punishes him for denying allegations of misconduct which he believes to be false and forces him to admit allegations of misconduct in order to avoid being found guilty of violating Rule 14, thus depriving him of due process and a fair hearing. He further contends that there is no compelling reason to find a police officer guilty of violating more than one department rule on the basis of one specific act of misconduct.

■ Rule 14 prohibits an officer from making a false report. That act is a particular type of misconduct. Transporting an alcoholic beverage in a police department vehicle is another type of misconduct. One who commits an act of misconduct and then subsequently makes a false report about it commits two separate and distinct acts. We cannot say that the Board's finding that plaintiff violated Rule 14 was against the manifest weight of the evidence.

### C.

Plaintiff contends that there is no credible evidence to support the Board's finding that he violated Rule 17 which prohibits transporting an alcoholic beverage in department property except in the performance of police duty. Plaintiff argues that his denial of this charge was corroborated by his partner's testimony; that the police department failed to produce the bottle or prove its contents contained alcohol; and it would be impossible for Poellnitz to describe the color of its contents in a dark squad car at night. Plaintiff also maintains that the Board's finding that there was insufficient evidence to support a violation of Rule 8 (disrespect to or maltreatment of any person) indicates that the Board did not believe Poellnitz's testimony, and the fact that Poellnitz waited 17 days before making a complaint should cast doubt on her credibility.

In effect, plaintiff is asking this court to reweigh the evidence and assess the credibility of the witnesses. However, it is the Board's duty to evaluate credibility and resolve conflict, and this court may only determine if the evidence, as weighed by the Board, supports its findings. *Taylor v. Police Board* (1st Dist. 1978), 62 Ill. App. 3d 486, 491, 378 N.E.2d 1160.

■ Plaintiff's partner testified that he did not "notice" a bottle of cream sherry in the squad car. Poellnitz's testimony that plaintiff took the bottle which was in a paper bag out of a box full of papers and returned it to the box while only she and plaintiff were present in the squad car, does not necessarily conflict with the partner's testimony. To conclude that the

Board did not find Poellnitz's testimony credible because it found the evidence insufficient to support a violation of Rule 8 is not supported by the record. Poellnitz gave a reasonable explanation as to why her complaint was not formally made until 17 days after the incident occurred. Although it was dark outside, Poellnitz testified that plaintiff held the bottle up in front of her which could enable her to read its label and see the color of its contents. The other findings make it apparent that the Board did find Poellnitz a credible witness and we will not disturb that determination on review.

## II.

The Board found plaintiff guilty of violating Rule 2: "Any action or conduct which impedes the Department's efforts to achieve its policy and goals or brings discredit upon the Department" in that plaintiff's conduct which violated Rules 10, 14, and 17 was not that which the department expects from a reasonably diligent, prudent, and cautious officer.

Plaintiff contends, without citation of authority, that Rule 2 is vague in that it fails to specify or designate the type of action or conduct that brings discredit to the department; that it is so broad that it is impossible for a respondent to prepare a proper defense; that it is a denial of due process since any type of misconduct can be construed as a violation of Rule 2; that it is duplicitous in that anyone found guilty of violating a rule other than Rule 2 becomes automatically guilty of violating Rule 2; that no evidence was presented at the hearing to define the policy and goals of the police department nor the type of action or conduct which discredits the department; and that no evidence was presented to show how the department was discredited by plaintiff's conduct.

It is not necessary for this court to decide the validity of Rule 2 since each act of misconduct upon which its violation is based would in itself constitute cause for suspension.

In *DeGrazio v. Civil Service Com.* (1964), 31 Ill. 2d 482, 202 N.E.2d 522, a police officer was charged with the violation of two police department rules. The supreme court held that one of the rules was invalid and sustained the officer's contention as to the impropriety of the finding thereunder. However, the second finding, conduct unbecoming a policeman, was supported by the evidence presented to the Civil Service Commission. Even though only one finding of fact made by the Commission was sustainable upon review, the supreme court affirmed the dismissal order.

## III.

The instant case deals with the suspension of a police officer. A broad discretion is accorded an administrative agency in determining

what constitutes a proper cause for suspension, but it is essential to the validity of such suspension that it be based upon substantial misconduct or incapacity. (*Zinser v. Board of Fire & Police Commissioners* (4th Dist. 1961), 28 Ill. App. 2d 435, 439, 172 N.E.2d 33.) The concept of misconduct must be rooted in substantial shortcomings and does not include conduct which is so trivial as to be unreasonable and arbitrary. (*Hruby v. Board of Fire & Police Commissioners* (1st Dist. 1974), 22 Ill. App. 3d 445, 453, 318 N.E.2d 132.) Findings of inattention to duty, making a false report, and transporting alcohol in department property are not such trivial matters as to be unreasonable and arbitrary grounds for a police officer's suspension. Plaintiff's violations were sufficiently serious to merit the punishment imposed.

Therefore, the judgment of the circuit court of Cook County upholding the order of the Board is affirmed.

Affirmed.

STAMOS, P. J., and HARTMAN, J., concur.