THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ORLANDO ATENCIA, Defendant-Appellant.

First District (2nd Division)   No. 81—2248

Opinion filed March 8, 1983.

James J. Doherty, Public Defender, of Chicago (Hugh Steven, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Dean Karlos, Assistant State's Attorneys, of counsel), for the People.

JUSTICE STAMOS delivered the opinion of the court:

Defendant Orlando Atencia was charged by indictment with possession with intent to deliver 30 grams or more of a substance containing cocaine. (Ill. Rev. Stat. 1979, ch. 56½, par. 1401(a)(2).) He was tried by a jury, found guilty, and sentenced to 18 years' imprisonment.

Defendant flew into Chicago on a one-way ticket from Miami on March 16, 1981. Defendant planned to stay in the area only four or five days.

On March 18, 1981, three Hispanic men registered at the Spa Motel in Chicago, Illinois. One of the three signed the name Orlando Atencia to the registry and was assigned room 236. The desk clerk could not positively identify defendant as one of the three men.

On March 19, agents from the Federal Drug Enforcement Administration (DEA) and detectives from the Chicago police department were conducting surveillance on the Belmont Bowl bowling alley in Chicago. They observed defendant and another man enter the alley around 8 p.m. When defendant and his companion left the alley in a car just after 10 p.m., the agents followed them to the Spa Motel. Defendant and his companion entered the motel lobby and went into the elevator. The detectives and agents conducted surveillance outside the motel for about two hours, until 12:30 a.m. on March 20. Neither defendant nor his companion were seen leaving the motel during this time.

A search warrant for room 236 at the Spa Motel was secured on the basis of an informant's tip. The warrant was executed by Chicago police and DEA agents on March 20. The officers entered the room with a pass key.

Upon entering the room, the officers discovered the defendant standing in only his underwear and socks and pointing a gun at them. Defendant was ordered to drop his gun, which he did. A search of the room turned up four plastic bags under the bed containing a white powdery substance and $26,900 in cash in a dresser drawer. Defendant was allowed to retrieve the rest of his clothes in the room and he was placed under arrest.

Laboratory tests on the contents of the four plastic bags revealed that two of the bags contained 1,953 grams of cocaine. Following a jury trial, defendant was convicted of possession of cocaine with intent to deliver and was sentenced to 18 years' imprisonment.

Defendant first contends that the prosecution failed to prove beyond a reasonable doubt that defendant possessed, with the intent to deliver, 30 or more grams of a substance containing cocaine. Ill. Rev. Stat. 1979, ch. 56½, par. 1401(a)(2).

In order to show unlawful possession, the State must show (1) defendant's knowledge of the presence of narcotics and (2) defendant's immediate possession and control of the substance. (*People v. Nettles* (1961), 23 Ill. 2d 306, 307, 178 N.E.2d 361.) Where narcotics are found on premises under defendant's control, it may be inferred that he had the requisite knowledge and possession, absent other facts and circumstances that might leave a reasonable doubt as to guilt in the minds of the jury. (*People v. Bell* (1972), 53 Ill. 2d 122, 126, 290 N.E.2d 214.) Whether there is possession and knowledge are both questions of fact to be determined by the jury, and its findings will not be disturbed on review unless the evidence is so palpably contrary to the verdict, or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of guilt. *People v. Calhoun* (1977), 46 Ill. App. 3d 691, 694-95, 361 N.E.2d 55.

In the instant case, room 236 at the Spa Motel in Chicago was registered to "Orlando Atencia" on March 18. The following day, March 19, defendant and another man entered the Spa Motel some time after 10 p.m. On March 20, shortly after 8 p.m., defendant was discovered in room 236 at the Spa Motel wearing only underwear and socks. The rest of his clothing had been hung in the room.

This evidence strongly suggests that room 236 was under defendant's control.

■ Defendant notes that the desk clerk at the Spa Motel testified that the registration on room 236 expired at noon on March 19. Under the totality of the circumstances presented, however, we cannot say that the jury's conclusion that defendant was in control of room 236 was so unreasonable or improbable as to create a reasonable doubt of guilt.

Defendant next contends that the evidence was insufficient to prove an intent to deliver.

■ Testimony at trial revealed that cocaine is normally sold "on the street" in quantities of quarter-grams, half-grams, and grams. Two of the bags found in defendant's constructive possession contained 1,953 grams of cocaine, much more than could reasonably be considered for personal use. Under these circumstances, it is reasonable to infer that such a quantity of cocaine was possessed with the intent to deliver. See *People v. Munoz* (1982), 103 Ill. App. 3d 1080, 1082, 432 N.E.2d 370.

Defendant also contends that the State failed to prove beyond a reasonable doubt that the substance in question was cocaine.

Police chemist Fitzgerald testified that she conducted seven tests on the substance at issue and that these tests are accepted in the field

of forensic science for determining the presence of cocaine. Fitzgerald testified that she was certain that the substance was cocaine after the fifth test (infrared spectometry test). The final two tests (mixed crystalline and mixed melting point) were conducted for the sole purpose of determining whether the cocaine was type L (organic) or type D (synthetic).

Defendant contends that the State failed to prove that the substance at issue was organic cocaine. Defendant does not attack the testing methods used to establish the presence of cocaine. Rather, defendant's objection focuses upon the testing methods used to determine whether the cocaine was type L or type D.

The statute under which defendant was convicted refers only to "any substance containing cocaine." (Ill. Rev. Stat. 1979, ch. 56½, par. 1401(a)(2).) There is no requirement that the cocaine be identified as type L or type D, and defendant has cited no authority requiring such a distinction. The police chemist, Fitzgerald, testified that after performing the first five tests she concluded that the substance at issue contained cocaine.

■■ Defendant's expert witness did not refute Fitzgerald's conclusion, nor did he attack the reliability of the tests performed by Fitzgerald in reaching that conclusion. Rather, the expert's testimony focused on the reliability of the final two tests which were performed to determine if the cocaine was type L or type D. The jury was entitled to believe the unrefuted testimony by Fitzgerald that the substance at issue contained cocaine. Any question regarding the validity of the final two tests used to distinguish between type L or type D cocaine is irrelevant.

■■ Defendant next contends that the evidence fails to exclude the reasonable hypothesis that defendant was left holding the bags of cocaine by a third party and that defendant had no intention of participating in the delivery of the substance. Since the evidence establishing defendant's knowing possession and intent to deliver is circumstantial, every reasonable hypothesis of innocence must be excluded. (*People v. Pizzi* (1981), 94 Ill. App. 3d 415, 421, 418 N.E.2d 1024.) Such a hypothesis, however, must arise from the evidence. (See *People v. Calhoun* (1972), 4 Ill. App. 3d 683, 690-91, 281 N.E.2d 363.) The trier of fact need not search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt. (*People v. Rhodes* (1981), 85 Ill. 2d 241, 249, 422 N.E.2d 605.) In the instant case, defendant asserts that he may have been left "holding the bag." Nothing in the record, however, supports such a theory. Absent some evidence supporting it, defendant's theory of innocence

does not give rise to a reasonable doubt as to his guilt.

Defendant next contends that the use at trial of his testimony given at two bail reduction hearings constitutes a violation of defendant's rights to reasonable bail and against self-incrimination. Defendant filed two motions to have bail reduced and was granted hearings on April 1 and 3. Defendant's testimony at these hearings revealed that he was a resident of Miami, that he had arrived in Chicago on March 16 and planned to stay only four or five days, that he had no friends or relatives here, and that he had been living at two hotels while in Chicago. Defendant contends that permitting the use of this testimony at trial violated defendant's fifth amendment right against self-incrimination and his eighth amendment right to reasonable bail. This is so, defendant claims, because allowing the prosecution to use a criminal defendant's testimony from a bail hearing at trial will force many defendants to sacrifice their constitutional right to reasonable bail in order to preserve their right against self-incrimination. Defendant charges that the necessity of choosing between these constitutional rights is "simply intolerable." Citing *Simmons v. United States* (1968), 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (use of suppression hearing testimony at trial constitutionally proscribed).

■ Although Illinois courts have not addressed this particular argument, the Federal courts have held that the use at trial of testimony from a bail hearing does not necessarily violate a defendant's fifth or eighth amendment rights. (See *United States v. Dohm* (5th Cir. 1980), 618 F.2d 1169, 1173-74; *United States v. Miller* (1st Cir. 1978), 589 F.2d 1117, 1135, *cert. denied* (1979), 440 U.S. 958, 59 L. Ed. 2d 771, 99 S. Ct. 1499; *c.f. Spinelli v. United States* (8th Cir. 1967), 382 F.2d 871, 891-92, *rev'd on other grounds* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (address information given by defendant prior to release on bail may be used at trial).) These cases have distinguished *Simmons*, relied on by defendant, by noting that in a fourth amendment suppression hearing, the testimony given necessarily goes to the ultimate issues in the case whereas in a bail hearing, defendant need not divulge the facts in his case in order to receive the benefits of the eighth amendment right to reasonable bail. (*United States v. Dohm* (5th Cir. 1980), 618 F.2d 1169, 1173-74; *United States v. Miller* (1st Cir. 1978), 589 F.2d 1117, 1135, *cert. denied* (1979), 440 U.S. 958, 59 L. Ed. 2d 771, 99 S. Ct. 1499.) Moreover, the necessity of having to choose between constitutional rights is not in and of itself constitutionally prohibited since "[t]he criminal process, like the rest of the legal system, is replete with situations requiring the making of difficult judgments as to which course to fol-

low." (*United States v. Miller* (1st Cir. 1978), 589 F.2d 1117, 1135, *cert. denied* (1979), 440 U.S. 958, 59 L. Ed. 2d 771, 99 S. Ct. 1499, quoting *McGautha v. California* (1971), 402 U.S. 183, 213, 28 L. Ed. 2d 711, 729, 91 S. Ct. 1454, 1470; see also *Spinelli v. United States* (8th Cir. 1967), 382 F.2d 871, 891-92, *rev'd on other grounds* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584.) We find that the use of defendant's bail reduction hearing testimony at trial does not, in itself, constitute a violation of defendant's rights to reasonable bail and against self-incrimination.

Alternatively, defendant contends that testimony from a bail hearing should be used at trial only if defendant "knowingly and intelligently" waives his right against self-incrimination. Defendant asserts that because he was not informed prior to testifying at the bail reduction hearings of his right to remain silent, he did not waive that right and therefore, his testimony should have been excluded at trial.

In an analogous situation, our supreme court has held that eliciting inculpatory information during the booking process does not constitute a violation of a defendant's right against self-incrimination even though the warnings required under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, were not repeated prior to the booking. (*People v. Fognini* (1970), 47 Ill. 2d 150, 152, 265 N.E.2d 133, *cert. denied* (1971), 402 U.S. 911, 28 L. Ed. 2d 653, 91 S. Ct. 1389.) The court concluded that, unlike the in-custody interrogation involved in *Miranda*, the questions asked during the booking process are not of the type designed to elicit incriminating testimony or admissions from the defendant (47 Ill. 2d 150, 152) and that therefore, the *Miranda* warnings need not be repeated prior to booking.

■ Here the record reveals that the questioning at the bail reduction hearings was not designed to elicit incriminating testimony. The questioning was not conducted by the prosecution. Defendant was questioned at the first hearing by the court and at the second hearing by defense counsel. The testimony elicited did not go directly to any element of the crime charged. Defendant's testimony revealed, among other things, that defendant was a resident of Miami, that he had flown in on March 16 intending to stay for only four or five days, and that he had been staying at two hotels while in Chicago. Moreover, defendant was represented by counsel at both hearings. The presence of counsel served as adequate protection of defendant's *Miranda* rights and obviated the need to repeat the *Miranda* warnings to defendant prior to his testimony at the bail reduction hearings. Under these circumstances, the court was not obligated to read defendant the *Miranda* warnings prior to his testifying at the bail reduction

hearings and, therefore, the use of his testimony from those hearings at trial did not violate defendant's right against self-incrimination.

Defendant's final contention is that the trial court abused its discretion by sentencing defendant to 18 years' imprisonment and by refusing to modify that sentence.

Sentencing in Illinois is largely a matter of judicial discretion. (*People v. Kloiber* (1981), 95 Ill. App. 3d 1061, 1071, 420 N.E.2d 870.) A proper sentence must be based on the particular factors of each case. Among the factors to be considered in imposing sentence are the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, age, prior conviction record, and the nature and circumstances of the offense for which the defendant is being sentenced. (95 Ill. App. 3d 1061, 1071.) The trial judge is present during the course of the trial and the sentencing hearing and is thus in a far superior position to evaluate these factors than is a court of review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) The trial judge's decision as to sentencing is entitled to great deference and will not be disturbed on appeal absent an abuse of discretion. 68 Ill. 2d 149, 154.

In the instant case, the evidence reveals, among other things, that defendant was 40 years old at the time of sentencing, is married, and has three children. The evidence also reveals that the defendant's family has no property or savings, and that Mrs. Atencia's employment involves cleaning apartments and she receives food stamps. Defendant has no prior convictions, and he informed the court that he became involved with the cocaine deal because his family was in extreme financial difficulty.

Prior to sentencing, the court received a presentence investigation report on defendant and stated that it was familiar with its contents. The court also stated that it was familiar with defendant's background which was explored in the hearing in aggravation and mitigation. The primary reason, according to the court, that defendant was sentenced to 18 years' imprisonment was because of the large amount of cocaine involved. The court stated that it questioned defendant's motive for getting involved in this scheme and it commented that defendant became involved as though he were a "major trafficker" of cocaine. The court noted defendant's age, the fact that defendant had never been convicted for any offense, and the impact that his absence would have on his family. The court stated that ordinarily, where this much cocaine was involved, it would have imposed the maximum sentence allowable (30 years) but, because of the alleged reasons defendant became involved in this scheme, only an 18-year sentence would

be imposed. The court stated that it had given much thought to the proper sentence to impose and, notwithstanding the factors in mitigation, it felt a harsh sentence was in order.

■■ It appears that the trial court considered all the relevant factors which the law requires be considered prior to imposing sentence. A search of the record reveals no evidence that the trial court abused its discretion by sentencing defendant to 18 years' imprisonment. Under these circumstances, it would be improper for us to substitute our judgment for the trial court's even if we would have imposed a different sentence had that function been delegated to us. See *People v. Perruquet* (1977), 68 Ill. 2d 149, 156, 368 N.E.2d 882.

For the reasons expressed herein, the judgment of the trial court is affirmed.

Affirmed.

DOWNING, P.J., and HARTMAN, J., concur.