THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRED GODEK, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DENNIS COATES, Defendant-Appellant.

First District (2nd Division)   Nos. 84—1631, 85—0060 cons.

Opinion filed November 26, 1985.—Rehearing denied January 14, 1986.

Louis B. Garippo and Susan G. Feibus, both of Louis B. Garippo, Ltd., of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Karyn Stratton, and Sheila Rudin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Defendants present a consolidated appeal from their criminal convictions as follows: In a bench trial, Godek was found guilty of possession with intent to deliver more than 30 grams of cocaine in violation of section 401(a)(2) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1981, ch. 56½, par. 1401(a)(2)) (Act), for which he was sentenced to nine years in the custody of the Illinois Department of Corrections. In a jury trial, Coates was found guilty of violating the same statute under different facts in an unconnected offense. He was sentenced by the circuit court to six years in custody of the Illinois Department of Corrections.

The common issues for which review is sought are whether: con-

viction for possession with intent to deliver cocaine requires proof of the specific isomer[1] of cocaine involved; the circuit court should have instructed the jury in the statutory definition of cocaine.

During the course of Godek's bench trial, the State presented a police chemist who was qualified as an expert by stipulation of both the State and the defense. She detailed the laboratory procedures used to analyze the compounds seized from Godek. The tests included: preliminary color screening precipitate; microcrystalline formation; ultraviolet spectrophotometer; and infrared spectrophotometer. All test results led the chemist to conclude that the substances with which Godek was charged with the intent to deliver contained cocaine. Defense cross-examination went only to the marking procedures followed in identifying the bags and envelopes in which the substances were contained. The chemist presented no evidence as to the cocaine's isomeric identification, nor was she so questioned by the State or the defense. When moving for a "directed" finding for the defense at the close of the State's case, the defense claimed only that the State did not show the substance treated was "pure" cocaine. Defendant's post-trial motion for a new trial, based upon the State's failure to identify the cocaine isomer involved, was denied. Godek's appeal alleges as error the failure of the State to prove "an essential element of the offense," namely, the isomeric identification of the cocaine.

Coates was convicted in a jury trial of possession with intent to deliver cocaine. In the Coates trial, the State presented two police chemists who were qualified as experts also. Both chemists identified the seized substances as containing cocaine after having performed tests similar to those described in Godek's case. In Coates' case a combination gas chromatography and mass spectrophotography depicted a molecule which could have been produced only by cocaine, according to one of the experts. The only questions asked by the defense of these experts, on cross-examination, dealt with the procedures followed in identifying the containers of the substances. Neither expert was asked to nor did they identify the specific isomer of the subject cocaine by the State or by the defense. Coates first raised the isomer issue in a post-trial motion. Coates' appeal alleges that the State failed to prove an essential element of the offense and, additionally, that the jury was not instructed as to the statutory defi-

---

[1]"Isomerism" is defined as "the phenomenon exhibited by two or more chemical compounds *** containing the same numbers of atoms of the same elements in the molecule *** and hence having the same molecular formula but differing in the structural arrangement of the atoms and consequently in one or more properties." Webster's Third New International Dictionary 1200 (1981).

nition of cocaine.[2]

Section 401 of the Act (Ill. Rev. Stat. 1981, ch. 56½, par. 1401) makes it unlawful to deliver, among other proscribed acts, a controlled substance. Section 401(a)(2) sets forth the penalties for violating that statute, and one who does so with respect to the controlled substances is guilty of a Class X felony if "30 grams or more of any substance containing cocaine" are delivered. No mention of isomer is to be found in section 401(a)(2). Defendants rely upon the enumeration in Schedule II of the Act (Ill. Rev. Stat. 1981, ch. 56½, par. 1206(b)(4)) for their assertion that "*** any salt, compound, derivative, or preparation of coca leaves" must be "*** chemically equivalent or identical with ***" such a substance in order to be included within the Schedule II enumeration and since the State offered no proof that the confiscated substance was "chemically equivalent or identical" with the controlled substance, nor any proof of the isomeric content of the substances defendants' were charged with delivering, the State's cases failed and the convictions must be reversed.

This court has twice before touched upon this issue.[3] Although in *People v. Phelan* (1981), 99 Ill. App. 3d 925, 426 N.E.2d 925, when discussing cocaine under the Act we stated that "the statute, as presently structured, controls only one of these isomers, '1' cocaine" (99 Ill. App. 3d 925, 930, 426 N.E.2d 925), *Phelan* did not rely upon that definition of cocaine and the limitation suggested was *dictum*. In *People v. Atencia* (1983), 113 Ill. App. 3d 247, 446 N.E.2d 1243, *cert. denied* (1983), 464 U.S. 917, 78 L. Ed. 2d 261, 104 S. Ct 283, we asserted that "[t]here is no requirement that the cocaine be identified as type L or type D." (113 Ill. App. 3d 247, 251, 446 N.E.2d 1243.) Analyzing the facts of the isomer issue, we stated there (113 Ill. App. 3d 247, 251, 446 N.E.2d 1243):

> "Defendant's expert witness did not refute [the chemist's] conclusion, nor did he attack the reliability of the tests performed *** in reaching that conclusion. Rather, the expert's testimony focused on the reliability of the final two tests which were performed to determine if the cocaine was type L or type D. The jury was entitled to believe the unrefuted testimony by [the chemist] that the substance at issue contained cocaine. *Any question regarding the validity of the final two tests used to*

---

[2]Appellants' counsel did not participate in the trial of either case.

[3]In other jurisdictions labelled the "cocaine isomer" defense or strategy. See *United States v. Francesco* (1st Cir. 1984), 725 F.2d 817, 820, and cases therein collected.

*distinguish between type L or type D cocaine is irrelevant."*
(Emphasis added.)

Therefore, as the fact finder in *Atencia* had a factual basis for determining that the suspect substance contained cocaine, the question of whether that cocaine was type L or type D was deemed inconsequential. In both of the instant cases, there was unrefuted expert testimony that the suspect substances contained cocaine. *Atencia* is controlling here.

In attempting to draw significance from the isomer distinction between "L" and "D" cocaine, defendants propose a restrictive interpretation of section 206(b)(4) of the Act (Ill. Rev. Stat. 1981, ch. 56½, par. 1206(b)(4)). Cocaine was not specifically enumerated; instead, schedule II proscribed "Coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions of coca leaves, which extractions do not contain cocaine or ecgonine."[4] Coates' post-trial motion made an offer to prove that a chemist would testify "that only 'L' cocaine is a derivative of the coca leaf and 'L' cocaine and 'D' cocaine are not chemical equivalents." Without suggesting that he had an obligation to do so, we note that the offer did not include proposed proof that the subject confiscated substances contained only "D" cocaine.

■ We have previously held in *People v. Otten* (1980), 91 Ill. App. 3d 692, 414 N.E.2d 1222, *appeal dismissed* (1981), 83 Ill. 2d 573, that the terms of the Act are not limited to purely technical pharmaceutical definitions. To the same effect is *People v. Chianakas* (1983), 114 Ill. App. 3d 496, 448 N.E.2d 620. (See also *People v. Royse* (1982), 107 Ill. App. 3d 326, 437 N.E.2d 679, *rev'd on other grounds* (1983), 99 Ill. 2d 163; *People v. Simon* (1980), 91 Ill. App. 3d 667, 416 N.E.2d 285; *Iowa v. Gibb* (Iowa 1981), 303 N.W.2d 673, 684-85.) In a case similar to the present case, *United States v. Francesco* (1st Cir. 1984), 725 F.2d 817, the court of appeals concluded from the overwhelming majority of other cited Federal authorities that the question of whether the subject substance was one proscribed by statute was for the jury, remarking that "[a]lthough the government has the burden in a criminal case of proving every element of the offense charged, it has no burden of proving that a term [cocaine] used in its commonly understood sense has no other possible meaning—at least until the

---

[4]Effective January 1, 1984, the word "isomer" was inserted between "compound" and "derivative" in the first line by Public Act 83—655.

possibility of another meaning is raised by the defense. The defense did not raise that possibility in this case." (*United States v. Francesco* (1st Cir. 1984), 725 F.2d 817, 821.) A similar approach must be followed in the instant case. The expert evidence submitted to the fact finders in each of the cases *sub judice* sufficiently identified the substances under scrutiny as statutorily prohibited cocaine.[5]

██ Defendants cite various written authorities in support of their position on appeal dealing with the comparative activities of stimulation and anesthesia as characteristics of L-cocaine and seven other synthetic isomers of cocaine; however, those authorities merely suggest that synthetic isomers are perhaps less potent, not that they are either impotent entirely or benign. More importantly, none of these authorities were cited, offered or argued at the circuit court level and cannot be considered dispositive here.

██ Defendant Coates has also challenged the sufficiency of the jury instructions given concerning the requisite finding of a controlled substance. The instruction given Illinois Pattern Jury Instruction (IPI Criminal 2d No. 17.11), was as follows:

> "To sustain the charge of delivery of controlled substance, the State must prove the following proposition:
>
> That the defendant knowingly delivered thirty grams or more of any substance containing cocaine, a controlled substance."

This instruction was arrived at by mutual consent and was first challenged by post-trial motion. The issue, therefore, was waived. (*People v. Tannenbaum* (1980), 82 Ill. 2d 177, 180, 415 N.E.2d 1027.) Assuming, *arguendo*, the absence of waiver, the defect upon which defendants assert their claims presumes that only L-cocaine is statutorily proscribed and the jury should have been so instructed. This presumption, however, collapses with our preceding rejection of the isomer issue.

---

[5]Of interest in this regard is *United States v. Scott* (4th Cir. 1984), 725 F.2d 43, 44, which upheld a conviction for possession of cocaine based upon a lay witness' testimony that he had used cocaine "quite a bit" and was familiar with its appearance and effect, concluding after he saw and sniffed the subject substance that it was cocaine. The "cocaine isomer" defense was also raised in that case and rejected, despite the complete absence of any chemical testing by experts in the case, the court of appeals asserting that the determination of whether the substance in question is within the statutory prohibition is one for the jury and noting the general refusal of courts to instruct that "D" cocaine is not a controlled substance within the statute. *United States v. Scott* (4th Cir. 1984), 725 F.2d 43, 45.

For the foregoing reasons, the convictions of Fred Godek and Dennis Coates must be affirmed.

Affirmed.

STAMOS, P.J., and BILANDIC, J., concur.