RONALD SCHLOBOHM, Plaintiff-Appellant, v. FRED RICE, Superintendent of Police, *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 86—1518

Opinion filed June 9, 1987.

Patrick A. Tuite and Brent D. Stratton, both of Law Offices of Patrick A. Tuite, Ltd., of Chicago, for appellant.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Maureen Jeannette Kelly, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff's appeal from the circuit court's affirmance upon administrative review of the Chicago police board's (board's) termination of his employment asserts that the decision was against the manifest weight of the evidence and that he was improperly charged.

Plaintiff, a 16-year veteran of the Chicago police department (department), was directed by the department to submit to a drug screening test on December 8, 1983. He reported to Medical Section Lt. Arthur Wirkus at sometime after 4 p.m. that day and requested that he be allowed to provide two urine samples, one of which would be tested by the department and a second, which would be retained by the department but would be available for independent or confirmatory testing if necessary. It was agreed that a second sample would be taken, which would be released only upon the approval of the personnel director or deputy police chief.

Plaintiff provided the requested specimen, which the lab assistant split, placing one-half in an unsealed, prelabeled lab bottle with a black cap and the other one-half in a bottle which plaintiff then labeled and sealed. The department specimen was transported to the Illinois Department of Alcoholism and Substance Abuse (IDASA) lab the next day, December 9, 1983, and was tested on December 21, 1983. The sample was initially subjected to an "emit test" (spectophotometer) which indicated the presence of the cocaine metabolite benzoyl ecgonine. The emit test was characterized as "very, very reliable" and as 98% to 99% accurate. Subsequently a "thin layer test" (chromotography) was conducted to confirm the presence of the cocaine metabolite. Both tests were positive for the presence of the cocaine metabolite, indicating cocaine ingestion or injection within 48 to 72 hours of the specimen acquisition.

On January 24, 1984, plaintiff was interviewed by police officers assigned to personnel investigations. He denied any cocaine use. The interviewing officers and plaintiff signed a transcript of that interview.

Subsequently, an attorney, apparently retained by the Fraternal Order of Police, contacted Lt. Wirkus concerning how he could have plaintiff's second specimen tested. Lt. Wirkus directed him to the personnel director or the deputy chief.

On May 8, 1984, plaintiff was charged by the Chicago superintendent of police with violations of department Rules 1, 2 and 14. Rule 1 prohibited the "[v]iolation of any law or ordinance." Rule 2 prohibited "[a]ny action or conduct which impedes the Department's efforts to achieve its policy and goals or brings discredit upon the De-

partment." Rule 14 prohibited "[m]aking a false report, written or oral."

In February 1985, in anticipation of 200 to 300 drug screenings for police academy applicants, Lt. Wirkus discarded plaintiff's sample, apparently in the belief that the IDASA lab was still holding the other sample, which already had been consumed by the testing. Wirkus stated that it was his sole decision to throw out plaintiff's bottle; he was then aware of the charges pending against plaintiff. He allegedly attempted to call plaintiff but was unable to reach him and failed to contact his attorney, whom he knew. There is no indication in the record that the specimen was ever actually requested by plaintiff before that time.

On August 14, 1985, after proceedings before a board hearing officer, plaintiff was found guilty of using cocaine premised entirely on the urinalysis and of lying to the department about his drug use. The hearing officer recommended plaintiff's separation and discharge and on September 26, 1985, the board adopted his findings and ordered plaintiff discharged.

Plaintiff filed suit for administrative review in the circuit court on October 25, 1985, which affirmed the board on May 20, 1986. He appeals that affirmance.

## I

■ In order to determine the propriety of the board's ruling, this court must first consider whether or not the board's findings of fact were contrary to the manifest weight of the evidence. (*Fagiano v. Police Board* (1984), 123 Ill. App. 3d 963, 974, 463 N.E.2d 845.) The board's findings are accorded great weight (*Kloss v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 252, 258, 449 N.E.2d 845) and must be held *prima facie* true and correct (Ill. Rev. Stat. 1985, ch. 110, par. 3—110). A court of review will not reweigh evidence or make an independent factual determination, but must ascertain on review whether the agency's final decision is just and reasonable in view of the evidence in the record. (*Sheldon v. Edgar* (1985), 131 Ill. App. 3d 489, 491, 475 N.E.2d 956.) It is within the board's province to evaluate the credibility of witnesses and to resolve any evidentiary conflicts. *Fagiano v. Police Board* (1984), 123 Ill. App. 3d 963, 974, 463 N.E.2d 845.

■ Substantial deference must be accorded to the board's interpretation and application of its own rules and policies, which are presumed valid. (*Taylor v. Police Board* (1978), 62 Ill. App. 3d 486, 489, 378 N.E.2d 1160.) Review is limited to determining whether the

board's interpretation of its own rules had a reasonable basis in law. *Taylor v. Police Board* (1978), 62 Ill. App. 3d 486, 489, 378 N.E.2d 1160.

■ After reviewing the agency's factual findings, a court of review next must determine whether those findings furnish a sufficient basis for the agency's conclusion that cause for discharge existed. (*Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 105, 449 N.E.2d 115.) "Cause" for discharge is "some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position." *Kreiser v. Police Board* (1976), 40 Ill. App. 3d 436, 441, 352 N.E.2d 389, *aff'd* (1977), 69 Ill. 2d 27.

## II

In the instant case, plaintiff does not contend that the use of cocaine by a police officer is an insufficient cause for an officer's discharge. Plaintiff maintains, however, that the board's decision was contrary to the manifest weight of the evidence because: (1) the urinalysis conducted could not prove that he had ingested "L" cocaine; (2) the charges against him were predicated upon a definitional rather than a proscriptive provision of the Controlled Substances Act (Ill. Rev. Stat. 1983, ch. 56½, par. 1206(b)(4)); and (3) there was no proof that he *knowingly* possessed cocaine.

This court has recognized that there are eight isomers of cocaine. (*People v. Simon* (1980), 91 Ill. App. 3d 667, 672, 416 N.E.2d 285.) Although *People v. Phelan* (1981), 99 Ill. App. 3d 925, 930, 426 N.E.2d 925, suggested that the Controlled Substances Act proscribed only the "L" isomer of cocaine, the "isomer defense" since has been specifically rejected by this court. (*People v. Godek* (1985), 138 Ill. App. 3d 1083, 1086-87, 487 N.E.2d 810, *appeal denied* (1986), 112 Ill. 2d 563; *People v. Chianakas* (1983), 114 Ill. App. 3d 496, 510, 448 N.E.2d 620; *People v. Atencia* (1983), 113 Ill. App. 3d 247, 251, 446 N.E.2d 1243, *cert. denied* (1983), 464 U.S. 917, 78 L. Ed. 2d 261, 104 S. Ct. 283.) The reason for rejection of the "isomer defense" is that because the purpose of the Controlled Substances Act is to curb drug abuse (*People v. Chianakas* (1983), 114 Ill. App. 3d 496, 510, 448 N.E.2d 620; *People v. Otten* (1980), 91 Ill. App. 3d 692, 697, 414 N.E.2d 1222), the terms of the Act will not be construed by applying purely technical pharmaceutical definitions; the suggestion to the contrary in *People v. Phelan* was merely *dictum* (*People v. Godek* (1985),

138 Ill. App. 3d 1083, 1086, 487 N.E.2d 810).

Contrary to plaintiff's argument, the foregoing cases demonstrate that there was no requirement that the board isomerically identify the cocaine ingested by plaintiff as type "L." (*People v. Godek* (1985), 138 Ill. App. 3d 1083, 1086-87, 487 N.E.2d 810.) Here, the testimony of the chemist and of the toxicologist provided reasonable bases for the board's conclusion that plaintiff had ingested a controlled substance.

## III

Plaintiff's next contention is that the board misdesignated section 206(b)(4) of the Controlled Substances Act (Ill. Rev. Stat. 1983, ch. 56½, par. 1206(b)(4)) as the law which plaintiff violated as his infraction of Rule 1. Section 206(b)(4) defines various controlled substances under Schedule II; section 402 makes the possession of a controlled substance unlawful. (Ill. Rev. Stat. 1983, ch. 56½, par. 1402.) Although the board neglected to specify section 402 as the operative proscriptive provision, the import of the charges was clear. Plaintiff demonstrates no prejudice by this oversight nor does he show that he did not understand the nature of the charges against him. To the contrary, the record reveals that plaintiff fully understood the basis of the Rule 1 charge to have been possession of cocaine. Plaintiff's counsel at the hearing was shown a proposed amendment to the charge; he asserted that he had no objection to it. Having failed to make any objection to the charge, having gone to trial upon the specifications as drawn, and having tried the case upon evidence of a violation of the statute and not its definition, plaintiff's objection to the charge comes too late. (*Pratico v. Board of Fire & Police Commissioners* (1967), 82 Ill. App. 2d 377, 383-85, 226 N.E.2d 505; *Bruno v. Civil Service Com.* (1962), 38 Ill. App. 2d 100, 111, 186 N.E.2d 108.) Further, charges filed before an administrative agency need not be drawn with the same requirements as an indictment before the circuit court. *Joyce v. City of Chicago* (1905), 216 Ill. 466, 471, 75 N.E. 184; *McCaffery v. Civil Service Board* (1955), 7 Ill. App. 2d 164, 175-76, 129 N.E.2d 257, *appeal denied* (1956), 6 Ill. 2d 631.

Assuming, *arguendo*, that contravention of Rule 1 was improperly based upon a violation of the Controlled Substances Act, the violation of a single departmental rule is sufficient to sustain the discharge of a police officer. (*Keen v. Police Board* (1979), 73 Ill. App. 3d 65, 73, 391 N.E.2d 190.) There was sufficient evidence in the present case to support the board's determination that plaintiff violated Rules 2 and 14. According to the hearing testimony of the department personnel, Rule

2 prohibited an officer from engaging in any conduct, lawful or unlawful, which impedes the department's efforts to achieve its policy and goals or discredits or degrades the department. Plaintiff's alleged use of cocaine clearly fell within the prohibited conduct contemplated by Rule 2. Focusing on different conduct, it was also reasonable for the board to conclude that plaintiff's formal statement denying that he had used cocaine was a false report in violation of Rule 14. The toxicologist and the chemist testified that plaintiff's urinalysis showed the presence of a cocaine metabolite in his system. The board was entitled to evaluate their credibility along with plaintiff's, and the reliability of the tests, and weigh the evidence accordingly. *Fagiano v. Police Board* (1984), 123 Ill. App. 3d 963, 974, 463 N.E.2d 845.

## IV

■ All the charged violations rely entirely upon the results of plaintiff's urinalysis to prove his knowing possession of cocaine. Plaintiff asserts that the test results alone were incapable of supporting a finding that he knowingly possessed cocaine. He urges that the results of a drug screening test, standing alone, are never sufficient support for finding knowing possession of a controlled substance, even when, as in the case *sub judice*, the requisite burden of proof is merely that of a preponderance of the evidence.

The criminal offense of possession of a controlled substance incorporates not only actual or constructive physical possession of the substance by the accused, but also includes an element of knowing possession. (*People v. Harris* (1972), 52 Ill. 2d 558, 560-61, 288 N.E.2d 385; *People v. Bussie* (1968), 41 Ill. 2d 323, 324, 243 N.E.2d 196, *cert. denied* (1969), 396 U.S. 819, 24 L. Ed. 2d 70, 90 S. Ct. 56.) Frequently, the element of knowledge is not susceptible of direct proof and may be proved by circumstantial evidence from which an inference of knowing possession may be reasonably and fairly drawn. (*People v. Harris* (1972), 52 Ill. 2d 558, 560, 288 N.E.2d 196.) Here, plaintiff contends, no proof of such knowledge was offered and therefore no inference thereof may be drawn without at least some circumstantial underpinning. Accordingly, he argues, the element was unproved and the board's finding was against the manifest weight of the evidence.

The board could have considered that the presence of a controlled substance in an individual's body, while not direct evidence of knowing possession, circumstantially gave rise to an implication of prior possession which later resulted in ingestion or injection. Drug tests may not be directly indicative of possession because the substance,

once within the accused's body, has moved beyond any concept of voluntary control. Although the conceptual possession had ended, the presence of the substance within plaintiff's body could have been deemed to have carried with it the clear and logical implication of prior knowledgeable possession. See *Yanez v. Romero* (10th Cir. 1980), 619 F.2d 851, 852, *cert. denied* (1980), 449 U.S. 876, 66 L. Ed. 2d 98, 101 S. Ct. 221; *Franklin v. State* (1969), 8 Md. App. 134, 137-38, 258 A.2d 767, 769; *State v. Hofford* (1977), 152 N.J. Super. 283, 290-91, 377 A.2d 962, 965-66.

Plaintiff's reliance upon criminal cases requiring proof beyond a reasonable doubt of knowing possession of a drug is misplaced and those cases are inapplicable to the circumstances of this case. The present board's conclusion cannot be viewed as manifestly erroneous. The positive results of plaintiff's drug tests are sufficient to support the board's findings.

For the foregoing reasons, the circuit court's affirmance of plaintiff's discharge by the police board must itself be affirmed.

Affirmed.

SCARIANO, P.J., and STAMOS, J., concur.