DAVID HOFFMAN, Plaintiff-Appellant, v. BOARD OF FIRE AND PO-LICE COMMISSIONERS OF THE CITY OF NAPERVILLE *et al.*, Defendants-Appellees.

Second District   No. 2—88—0031

Opinion filed September 29, 1988.

Keith E. Roberts, Sr., and Robert R. Verchota, both of Donovan & Roberts, P.C., of Wheaton (Rodney W. Equi, of counsel), for appellant.

Thea M. Armstrong and Anne C. Grow, both of Naperville (Francis J. Cuneo, Jr., of counsel), for appellees Board of Fire and Police Commissioners of City of Naperville, Mary Jo Lenert, Carl Warner and John Baber.

Marvin J. Glink, of Ancel, Glink, Diamond, Murphy & Cope, P.C., of Chicago, for appellees Gary J. Bolt, Michael Brian, Kevin A. Driscoll, Keith E. Dwyer, James Hartman, Kevin Kirk, James M. Jendzio, Bruce F. Longino, Thomas R. Walker, Robert W. Marshall, John Murr, James O. Pautlitz, John J. Ott, Paul Ruffolo and Paul S. Shafer.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, David Hoffman, brought suit against defendants, the Board of Fire and Police Commissioners of the City of Naperville (Board) and various individual members of the Naperville police department, seeking a declaration of the invalidity of a promotional eligibility list for sergeant prepared by the Board and a *mandamus* and injunctive relief to promote plaintiff to the rank of sergeant in the Naperville police department. Following a bench trial, the circuit court enjoined the Board from conducting any further promotional examinations until a definition of a passing grade is adopted by the Board but denied all other relief sought by plaintiff.

On appeal, plaintiff contends that the circuit court's decision to deny him relief was erroneous and that we should reverse the judgment against him and grant him affirmative relief which would promote him to sergeant or, alternatively, declare the eligibility list and promotions invalid and order that they be redetermined.

On September 10, 1985, the Board administered a written examination for promotion of patrol officers on the Naperville police department to the rank of sergeant. Twenty-four officers, including plaintiff, took the examination.

One of the rules previously adopted by the Board governing the promotion process states that, "A 'passing grade' of '70' must be received on the written and oral examinations for promotion. Examinees who do not obtain such a grade in any part of the examination are thereby eliminated from further examination."

The examination was proctored by Barbara Byard, personnel administrator for the City of Naperville. At the sergeants test, Byard told the examinees that a minimum score of 70 was required in order to go on to the next level of the testing process. After the sergeants examination, Byard counted the number of correct answers on each examination answer sheet out of the total 145 questions on the sergeants examination, and then matched the answer sheets with the officers taking the test. Byard then asked Mary Jo Lenert, chairman of the Board, how many names should appear on a list of officers eligible to proceed to the next stage of the examination process. Chairman Lenert told Byard to take the top one-third, which was eight names. The day after the examination, a list of eight names, including plaintiff's, was posted at the police department.

During the administration of a lieutenants examination given two days after the sergeants examination, a question was raised as to the passing grade. Byard responded that due to problems encountered during the sergeants examination, the lieutenants examination would be graded on a curve. Byard noticed that Sergeant Zittnan looked puzzled by that announcement and so she checked with Marvin Glink, attorney for the City of Naperville. Byard then told the examinees that according to Glink, "70" in the rules meant 70%. After the examination, as with the sergeants examination, Byard determined the number of correct answers on each examination and matched these raw scores with the examinees' names.

After the lieutenants examination, Byard telephoned Chairman Lenert and informed her that a question as to grading had arisen during the lieutenants examination. On the Monday following the examinations, a meeting was held to discuss grading the examinations to

determine a passing score. Present at the meeting were Chairman Lenert, Barbara Byard, Francis Cuneo, attorney for the Board, and his associate, Thea Armstrong. During the meeting, Lenert said that there was no real basis for her original decision that the top one-third should pass. Various methods of grading the examinations were discussed. The method eventually decided upon was to subtract the lowest raw score (number of correct answers) achieved from the highest; multiply the difference by .7; and subtract that product from the highest raw score. The number arrived at would be the passing raw score. Chairman Lenert instructed Byard to revise the list of officers passing the sergeants examination and to prepare the list of those passing the lieutenants examination based on this formula. The formula was applied to both examinations, resulting in 22 out of 24 examinees passing the sergeants examination and 7 out of 10 examinees passing the lieutenants examination. A revised sergeants list containing 22 names and a list of those passing the lieutenants test containing 7 names were prepared.

Those passing the written examination were eligible to continue on to oral examination. After the completion of the testing process, final lists of those eligible for promotion were compiled. The final eligibility list for promotion to sergeant contained 16 names, including plaintiff's. On January 6, 1986, the Board promoted defendants Bruce Longino and Keith Dwyer to the rank of sergeant. On May 5, 1986, the Board promoted defendants Robert Marshall, Paul Shafer, and Paul Ruffolo to the position of sergeant. Plaintiff was not promoted.

Only three of the officers who took the sergeants examination answered correctly more than 70% of the questions (101.5 out of 145). They were Keith Dwyer, who answered 108 correctly; John Ott, who answered 104 correctly; and plaintiff, who answered 103 questions correctly. Out of these three, only Dwyer and plaintiff appeared on the final eligibility list containing 16 names. Chairman Lenert testified that, at the time of the meeting at which grading methods were discussed, she was aware that only three officers had answered 70% correctly. She did not, however, know the identities of these officers.

Chairman Lenert testified that at the time the formula for determining passing scores was arrived at, she had never seen a prior examination or grades. Barbara Byard testified that curves had been used in grading previous promotional examinations. She was unable, however, to describe any methods that had been used previously. Defendants submitted previous written examinations and eligibility lists showing that in the past the Board had placed examinees with scores of less than 70% on the eligibility list.

Joanne Adams, Director of Assessment Services for the International Personnel Management Association (IPMA), testified that IPMA developed the tests that were administered by the Board. Adams testified that her position with IPMA involves conceiving the idea for a test and overseeing its development. She testified that she supervises outside consultants who prepare the tests.

Adams further testified that the particular tests used by the Board were not developed with the specific applicant pool from Naperville in mind, but rather were developed for use throughout the country. Adams also testified that the instructions accompanying the test do not specify a method of grading.

Adams was certified as an expert witness in the area of test formulation and evaluation for persons attempting to obtain positions in police and fire departments. Adams stated that she was familiar with the method used by the Board to determine a passing score and that it was, in her opinion, an acceptable method under accepted testing principles. Adams further testified that "passing score of 70" could probably be interpreted in an unlimited number of ways.

Following a hearing, the trial court found that the method used by the Board in determining a passing score on the promotional examinations was "not reasonable and an arbitrary formulation of a test score." The court enjoined the Board from holding any further examination until "the definition of what a score of 70 is, is adopted by the Board, or until the Board removes the requirements of the score and replaces it with some alternative form of determining what constitutes a passing score." However, the court denied all further relief sought by plaintiff, stating that the court did not feel it could interpose its decision to promote upon the discretion of the authority of the Board to place a person on the eligibility list.

Section IV, paragraph 7, of the Rules of the Board of Fire and Police Commissioners of the City of Naperville (Board Rules), states:

"A 'passing grade' of '70' must be received on the written and oral examinations for promotion. Examinees who do not obtain such a grade in any part of the examination and shall be so notified in writing, and their names will not appear on the promotion Eligibility List."

Plaintiff argues on appeal that " 'passing grade' of '70' " in the Board Rules means that one must answer 70% of the questions on the written examination correctly. Plaintiff claims that had the Board adhered to the Board Rules, only one name other than his would have appeared on the eligibility list. Section IV, paragraph 6, of the Board

Rules states that when there is a promotion vacancy, "the Board shall fill such vacancy from the top three names of the promotion Eligibility List; provided, however, where there are less than three persons remaining on the promotional Eligibility List, the appointment shall be made from names remaining on said list until same expires." Therefore, plaintiff maintains that because he was one of only two persons properly on the eligibility list, he would have been guaranteed one of the two promotions subsequently made on January 6, 1986.

The Board, including the other defendants who have adopted the brief of the Board, responds that plaintiff has not met his burden of proof that the straight 70% method of grading is the only method that can be used under the Board Rules. The Board argues that plaintiff did not offer any evidence that the straight 70% method was the only permissible interpretation of the Board Rules and, in fact, its expert, Joanne Adams, testified that the Board's method of grading was an acceptable method. Further, the Board contends that section IV, paragraph 2, which provides that "[a]ll examinations for promotions shall be competitive among [candidates for promotion]," is indicative that a curve method of grading be utilized rather than a raw score of 70%. The Board contends that under its method the term "grade" contemplates a position within a spread of scores, giving effect to the language in section IV, paragraph 2, of the Board Rules that the examinations be competitive.

Construction of the term " 'passing grade' of '70' " of section IV, paragraph 7, of the Board Rules is central to the determination of whether plaintiff is entitled to promotion to sergeant as a matter of law. While plaintiff argues that a straight percentage is the proper interpretation of the Board Rules, the Board argues that the method it employed is a permissible interpretation and that its interpretation is entitled to deference and a presumption of validity.

■■ ■ An administrative body's interpretation of its own rules is entitled to a presumption of validity. (*Schlobohm v. Rice* (1987), 157 Ill. App. 3d 90, 93, 510 N.E.2d 43; *Taylor v. Police Board* (1978), 62 Ill. App. 3d 486, 489, 378 N.E.2d 1160.) Review is limited to determining whether the administrative agency's interpretation of its own rules has a reasonable basis in law. (*Schlobohm*, 157 Ill. App. 3d at 93-94, 510 N.E.2d at 45; *cf. Environmental Protection Agency v. Pollution Control Board* (1981), 86 Ill. 2d 390, 403, 427 N.E.2d 162.) In construing regulations promulgated by an administrative agency, the same rules used in the construction of statutes apply. (*Lipman v. Board of Review* (1984), 123 Ill. App. 3d 176, 180, 462 N.E.2d 798.) In construing a statute, the language should be given its plain and ordi-

nary meaning. *City of East Peoria v. Group Five Development Co.* (1981), 87 Ill. 2d 42, 46, 429 N.E.2d 492.

■ At trial, the Board argued that its method of determining a passing score by subtracting 70% of the difference between the highest and lowest scores from the highest score is an acceptable interpretation of the Board Rules. Plaintiff correctly points out that this method is not supported by the language of the Board Rules, and, further, the trial court concluded that "the procedure was not reasonable and an arbitrary formulation of a test score." The mere fact that 70% is used as a factor in the formula employed by the Board does not make that formula a reasonable interpretation of the Board Rules.

While the Board presented evidence that the method it used was an acceptable grading method under testing principles and that the Board had used a curve on past examinations, this evidence has no bearing on whether the method was a reasonable interpretation of the actual language of the Board Rules. In any case, the Board's interpretation of its rules, even if it were bolstered by prior practices, is not binding upon this court if unreasonable.

We interpret " 'passing grade' of '70' " as set forth in the Board Rules to mean 70%, as plaintiff suggests. While the word "percent" does not appear in the Board Rules, 70% is a common understanding of a grade of 70. While the Board notes that other parts of the Board Rules refer to percentages such that the Board knew how to use the term when it wanted to, in those parts of the rules the term "grade" would not be an appropriate designation given the context of the usage. The language " 'passing grade' of '70,' " given its plain and ordinary meaning, requires that 70% of the questions on the examination be answered correctly.

The Board suggests that the use of a straight percentage is inconsistent with the mandate of the Board Rules that "all examinations for promotion shall be competitive among such members of the next lower rank as desire to submit themselves to examination" as contained in section IV, paragraph 2. The use of the 70% passing level does not render the examination uncompetitive. After an officer passes the test, his actual performance still determines how high on the eligibility list his name will appear. Officers taking the test will still strive to get the highest score possible and not merely to pass.

We, therefore, conclude that the Board's interpretation of section IV, paragraph 7, of the Board Rules is unreasonable and is contrary to the plain and ordinary meaning of the language of the provision. It follows that only plaintiff and one other person were entitled to be on the eligibility list for sergeant following the written and other exami-

nations. Because fewer than three persons were on the eligibility list, the appointments to sergeant had to come from these two names on the list. Section IV, paragraph 6, of the Board Rules provides as follows:

"6. When the City Manager informs the BOARD in writing of the existence of a promotion vacancy, the BOARD shall fill such vacancy from the top three names of [*sic*] the promotion Eligibility List; provided, however, where there are less than three persons remaining on the promotional Eligibility list, the appointment shall be made from names remaining on said list until same expires."

The Board argues, however, that the trial court did not have authority to promote plaintiff to sergeant because, under the Board Rules, a series of examinations must be passed before plaintiff is entitled to promotion to sergeant. This contention overlooks the Board's own rules and its own action in placing plaintiff on the eligibility list.

The record reveals that following the written examination, plaintiff and others successfully completed the remaining tests and were placed on the eligibility list. Section IV, paragraph 5, of the Board Rules provides:

"5. Upon the completion of the examination process, candidates who passed the series of examinations shall be placed on the Eligibility List for the applicable promotion position, subject to passing a medical examination at the time of appointment. Credit for military service may be claimed in accordance with the Illinois Statutes."

Thus, once plaintiff was placed on the eligibility list by the Board after passing the series of examinations, he was entitled to promotion to sergeant subject only to his passing a medical examination, under the facts here where two vacancies existed and only plaintiff and another had received a passing grade of 70 on the written examination.

■■ ■ Plaintiff correctly notes that *mandamus* will be issued to command a public official to perform a ministerial duty. (*People ex rel. Ryan v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1985), 136 Ill. App. 3d 818, 483 N.E.2d 1037.) While it is true that *mandamus* will not issue to compel a discretionary act (*Chicago Association of Commerce & Industry v. Regional Transportation Authority* (1981), 86 Ill. 2d 179, 185, 427 N.E.2d 153, 156), plaintiff has shown that he was automatically entitled to one of the two promotions that were actually given since only his name and that of Keith Dwyer were properly on the eligibility list. Under the Board Rules, there was no discretion left in the promotion process; therefore, *man-*

*damus* would properly lie. See *Hetzer v. State Police Merit Board* (1977), 49 Ill. App. 3d 1045, 365 N.E.2d 261; *People ex rel. Gaynor v. Board of Fire & Police Commissioners* (1957), 14 Ill. App. 2d 329, 335, 144 N.E.2d 763.

For the foregoing reasons, we reverse the judgment of the circuit court denying plaintiff relief and remand to the circuit court to issue a *mandamus* compelling the Board to promote plaintiff to sergeant with corresponding benefits effective January 6, 1986, subject to his passing a medical examination as prescribed in section IV, paragraph 5, of the Board Rules. While plaintiff has requested that we also declare the eligibility list posted November 6, 1985, and promotions made therefrom be held invalid and require the Board to certify a sergeant's eligibility list containing the names of plaintiff and Keith Dwyer, the parties have not addressed with corresponding argument this relief and the consequences of declaring invalid the sergeants list and promotions therefrom. Upon remand, the trial court may determine this question if raised by the parties.

Reversed and remanded with directions.

INGLIS and DUNN, JJ., concur.