THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant and Cross-Appellee, v. ROBIN A. ENGLAND, Defendant-Appellee and Cross-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALFREDO S. GARCIA, Defendant-Appellant.

Second District Nos. 2—88—0821, 2—88—0852 cons.

Opinion filed August 25, 1989.—Rehearing denied October 12, 1989.

10

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Donald J. Ramsell, of Ramsell & Associates, of Schaumburg, for appellant Alfredo Garcia.

Donald J. Ramsell, of Ramsell & Associates, of Schaumburg, for appellee Robin A. England.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Alfredo S. Garcia, appeals from the directed finding in favor of the State in a summary suspension hearing in the circuit court of Du Page County (No. 88—0852). In a separate case, the State appeals from the order of the circuit court of Du Page County granting the petition of defendant, Robin A. England, for rescission of summary suspension (No. 88—0821).

Both cases have been consolidated on appeal and raise the issue of whether the use of a testing solution prepared by an Illinois State police trooper comports with the Illinois Department of Public Health (Department) regulations requiring the use of a certified controlled reference sample in testing and certifying a breath analysis instrument.

In No. 88—0852, defendant Garcia filed a petition for rescission of summary suspension. At the summary suspension hearing, Dietmar Grohlich, Ph.D., supervisor of the Department's toxicology section, testified regarding the Department's procedures for preparing the simulator or test solution used by the Department to test breath analysis instruments. According to Grohlich, simulator solution is an aqueous alcohol solution consisting of alcohol and water with a .10% concentration of alcohol. The solution is prepared in the Department's laboratory by chemists and then tested 4 to 10 times on a precalibrated breath analysis instrument as well as on a gas chromatograph, if one is available. Subsequent to the testing and prior to releasing the simulator solution, the gas chromatograph and breath analysis equipment are checked, and Grohlich certifies the accuracy of the simulator solution. The Illinois State Police is the only law enforcement agency to create its own simulator solution to certify a breath analysis instrument.

Trooper Dennis Erickson of the Illinois State Police, who certified the accuracy of the breath analysis instrument used to test defendant Garcia, testified to the procedures he followed in preparing the simulator solution used in certifying the instrument. He is designated as an inspector by the Department to certify, repair, and maintain breath testing instruments of the Illinois State Police. Trooper Erickson stated that he followed the instructions provided by the manufacturer

of the breath analysis instrument for making simulator solution. He first made what is known as stock solution which is prepared by measuring 77 milliliters of 200-proof ethanol (ethyl alcohol) with 923 milliliters of distilled water. This is done by using a graduated pipette for measuring. Although Trooper Erickson's testimony is not altogether clear, he apparently stored the stock solution in his refrigerator and later in a locked cabinet in his basement.

To prepare the simulator solution, he mixed, using a burette, 10 milliliters of the stock solution with 490 milliliters of distilled water. Neither the stock solution nor the simulator solution was tested for accuracy on any testing instrument prior to his using the simulator solution to test the breath analysis instrument used in this case. Once he completes his testing of breath analysis instruments on a particular day, he disposes of the simulator solution. The printouts of the test results produced by the breath analysis instrument indicate that on May 4, 1988, the test results were two .10% readings and one .09% result and the results for the June 2, 1988, test were two .09% results and one .10% result. According to Trooper Erickson, if the instrument is functioning properly, it should read .10% plus or minus .01% when tested.

The trial court granted the State's motion for a directed finding and ruled that the defendant had not presented any evidence that there was anything improper in Trooper Erickson's testing procedure which would raise a *prima facie* case.

In No. 88—0821, defendant England filed a petition for rescission of summary suspension, and the following facts were adduced at the hearing thereon. The breath analysis instrument used to test defendant England was certified on April 4, 1988, and again on May 4, 1988, both times by Trooper Erickson. Trooper Erickson testified that he prepared the simulator solution used to test the instrument on April 4, 1988, in his home and per the instructions provided by the Illinois State Police. Erickson admitted that if the solution was not properly made, it would affect the certification of the breath analysis instrument. Erickson also stated that he did not test the simulator solution on any independent testing device nor was it certified by anyone. Erickson indicated that the simulator solution was .10%, and the readings obtained as a result of his testing on April 4, 1988, were both .09%. The readings on May 4, 1988, were .10% for two readings and .09% for another.

Erickson prepared the April 4, 1988, simulator solution from the same batch of stock solution that he used to prepare the May 4, 1988, simulator solution. That simulator solution was not submitted to a

chemist or laboratory for analysis. Both batches of simulator solution were disposed of after being used on the dates of April 4 and May 4, 1988.

Erickson further stated that he had always followed the manufacturer's instructions for making the simulator solution and for storing the stock solution. Additionally, he stated that he was issued the necessary equipment for preparing the solutions and was trained in its use. He testified to the procedures he followed in making the solutions. He further testified that the ratios used in preparing the solutions are recommended by the manufacturers of the breath analysis and testing instruments and also comport with the Department's standards.

In this case, the trial court found that the testing was not done in accordance with the standards promulgated by the Department of Public Health and the breath analysis results were inadmissible. The statutory summary suspension was rescinded.

 We will first address the propriety of the trial court's directed finding in favor of the State in defendant Garcia's case. Summary suspension rescission hearings are civil proceedings in which the person who is seeking rescission of the summary suspension bears the burden of proof. (*People v. Orth* (1988), 124 Ill. 2d 326, 337-38, 530 N.E.2d 210.) The motorist must first make a *prima facie* showing for rescission that the test results are unreliable, which will shift the burden to the State. (*Orth*, 124 Ill. 2d at 337, 530 N.E.2d at 215.) Also, a person seeking rescission of summary suspension may raise the issue of noncompliance with Department administrative regulations at a rescission hearing. (*People v. Hamilton* (1987), 118 Ill. 2d 153, 160, 514 N.E.2d 965.) The trial judge's finding as to the *prima facie* case will not be overturned on appeal unless it is against the manifest weight of the evidence. *Orth*, 124 Ill. 2d at 341, 530 N.E.2d at 217.

██ Defendant Garcia's argument below and on appeal is that the State failed to comply with the Department's regulations because Trooper Erickson did not use a "certified control reference sample" as required by the regulations. In construing regulations promulgated by an administrative agency, the same rules used in the construction of statutes apply. (*Northern Illinois Automobile Wreckers & Rebuilders Association v. Dixon* (1979), 75 Ill. 2d 53, 58, 387 N.E.2d 320; *Hoffman v. Board of Fire & Police Commissioners* (1988), 175 Ill. App. 3d 219, 224, 529 N.E 2d 790.) In construing a regulation, like a statute, the language should be given its plain and ordinary meaning. (*Hoffman*, 175 Ill. App. 3d at 224-25, 529 N.E.2d at 794.) When the language of a statute is clear and unambiguous, courts will not read

exceptions, conditions, or limitations into the statute (*People v. Goins* (1988), 119 Ill. 2d 259, 265, 518 N.E.2d 1014) and will not consider other aids. *County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 151, 485 N.E.2d 1076.

Section 510.100 of the Department's regulations states in pertinent part:

> "(a) An instrument must be accurate within plus or minus 0.01% W/V to be certified. To determine accuracy of instruments, an inspector shall perform two (2) analyses on a *certified controlled reference sample* at least once a month at intervals not to exceed 45 days. The inspector shall record test results of his certification in the instrument log book. The original certification test results will be retained by the inspector." (Emphasis added.) (77 Ill. Adm. Code §510.100 (1986).)

Section 510.20 defines "certified controlled reference sample" as:

> "[A] suitable reference of known ethyl alcohol concentration." (77 Ill. Adm. Code §510.20 (1985).)

We note at this point that defendant does not challenge the fact that if Trooper Erickson did follow the instructions, then the resulting simulator solution would be correct. Rather, defendant argues that Trooper Erickson's failure to have the simulator solution tested independently to certify the alcohol concentration therein resulted in an ethyl alcohol solution of unknown concentration.

■ We note initially that neither defendant nor the State cites any Illinois case, nor do we find any, interpreting this section of the regulations or applying it under these circumstances. The plain language of the definition in section 510.20 of the Department's regulations, however, requires a "suitable reference of known ethyl alcohol concentration." It does not require that the simulator solution be prepared by the Department, as defendant argues. Thus, for the defendant to establish a *prima facie* showing of unreliability in this context, he would have to offer some evidence that Trooper Erickson did not use a suitable reference of known ethyl alcohol concentration.

■ The evidence established that Trooper Erickson followed the manufacturer's instructions supplied with the equipment for preparing the simulator solution and that following the instructions would result in an ethyl alcohol concentration of .10%. As such, the evidence establishes that Trooper Erickson did use a suitable reference of known ethyl alcohol concentration. More importantly, defendant only offered evidence that Trooper Erickson did not prepare the solution in a laboratory, nor did he conduct any independent analysis of the solution once he had prepared it. This evidence alone, however, is insufficient

to create a *prima facie* showing that Trooper Erickson did not use a suitable reference of known ethyl alcohol concentration. Dietmar Grohlich, the Department's supervisor of its toxicology section, testified to the testing procedures of the Department only and did not indicate that Trooper Erickson's method of testing was inaccurate in any way.

While it may very well be that the Department engages in a more scientific approach as to its methodology in preparing and testing its simulator solution, the issue in this case is whether Trooper Erickson's methodology was sufficient to satisfy the regulation requirement that accuracy of an instrument be tested at a specific time on a certified controlled reference sample. Absent some evidence that Trooper Erickson failed to properly comply with the manufacturer's instructions, that compliance with the instructions would not result in a .10% simulator solution, or other evidence that Erickson's method was inaccurate, defendant failed to establish a *prima facie* showing that the trooper did not use a suitable reference of a known ethyl alcohol concentration, and the trial court's ruling in that regard was not against the manifest weight of the evidence.

Our analysis is equally applicable to the case involving defendant England. Defendant only showed that Trooper Erickson failed to prepare the simulator solution in a laboratory and that he did not conduct an independent analysis of the alcohol concentration after preparing it. The other evidence was that he followed the recommended instructions for preparing the solution and that such procedure would result in a known ethyl alcohol concentration of .10%. Thus, the evidence was insufficient to establish that he failed to use a certified controlled reference sample as those terms are defined in the Department's regulations. As such, the trial court's rescission of England's summary suspension was against the manifest weight of the evidence.

We therefore reverse the judgment of the circuit court of Du Page County rescinding the summary suspension in defendant England's case and affirm the entry of a directed finding in defendant Garcia's case.

No. 88—0821—Reversed.
No. 88—0852—Affirmed.

DUNN and LINDBERG, JJ., concur.