# Illinois Official Reports

## Appellate Court

<div style="border:1px solid black">

### *Kinsella v. Board of Education of the City of Chicago*,
### 2015 IL App (1st) 132694

</div>

| | |
|---|---|
| Appellate Court Caption | KATHLEEN KINSELLA, Petitioner, v. BOARD OF EDUCATION OF THE CITY OF CHICAGO, DAVID VITALE, President, Board Members JESSE RUIZ, HENRY BIENEN, MAHALIA HINES, CARLOS AZCOITA, DEBORAH QUAZZO and ANDREA ZOPP, BARBARA BYRD-BENNETT, Chief Executive Officer ILLINOIS STATE BOARD OF EDUCATION And VICKI PETERSON COHEN, Hearing Officer, Respondents. |
| District & No. | First District, Second Division<br>Docket No. 1-13-2694 |
| Filed | February 10, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant school board's finding that plaintiff teacher was "under the influence" based solely on her breath-test score of 0.053 and that her conduct was cause for her dismissal was arbitrary and not supported by the evidence; therefore, the board's final decision was reversed. |
| Decision Under Review | Petition for review of order of Board of Education of the City of Chicago, No. 13-0824R38. |
| Judgment | Reversed. |

| Counsel on Appeal | Miroballi, Durkin & Rudin, LLC, of Chicago (Jessica R. Durkin, of counsel), for petitioner. |
|---|---|
| | Board of Education of the City of Chicago Law Department, of Chicago (James L. Bebley, of counsel), for respondents. |

| Panel | JUSTICE PIERCE delivered the judgment of the court, with opinion. Justices Neville and Liu concurred in the judgment and opinion. |
|---|---|

**OPINION**

¶ 1     Defendant Board of Education of the City of Chicago (Board) terminated petitioner Kathleen Kinsella's employment as a tenured teacher for violation of Board rules and policy finding she was under the influence of alcohol when she reported to work based on a blood-alcohol level of 0.053. After a hearing, the hearing officer found the Board did not prove by a preponderance of the evidence that Kinsella was under the influence of alcohol and recommended reinstatement. The Board accepted the hearing officer's findings of fact but rejected her legal conclusion that the evidence did not support the finding of "being under the influence." The Board terminated Kinsella, finding she was under the influence of alcohol in violation of Board policies. Petitioner filed a direct appeal to this court for administrative review pursuant to section 34-85(8) of the Illinois School Code (105 ILCS 5/34-85(8) (West 2012)). Jurisdiction lies in this court pursuant to Illinois Supreme Court Rule 335 (eff. Feb. 1, 1994).

¶ 2                                    BACKGROUND

¶ 3     Hearing officer Vicki Peterson Cohen conducted a two-day hearing in January and March of 2013, which produced the following evidence. Kathleen Kinsella was a tenured teacher employed by the Board since 2008. During her entire teaching career she taught kindergarten at William H. Ray Elementary School.

¶ 4     Jeffrey Alstadt, the school's assistant principal, testified that on May 10, 2012, petitioner reported to work at 8:31 a.m. Shortly thereafter, he smelled a "fragrance" like "grain alcohol" coming from the area near Kinsella. He engaged in a short conversation with Kinsella and confirmed that she was the source of the odor. He testified that Kinsella was in a good mood, her eyes were a "little glazed" and her speech was a "little slurred." He reported to principal Tatia Beckwith that Kinsella smelled of alcohol but he did not tell Beckwith that Kinsella's speech was slurred. Alstadt further testified that Kinsella's face looked normal; she did not have dilated pupils; she exhibited no tremors; she was not profusely sweating; she did not appear to be excessively tired or demonstrate a lack of coordination. Prior to May 10, he had never smelled alcohol on Kinsella nor heard any reports of Kinsella smelling of alcohol at work.

¶ 5    Approximately 15 minutes after Alstadt informed Beckwith of his observation, Beckwith called Kinsella into the main office, where Beckwith confirmed the odor of alcohol on Kinsella's breath. Beckwith testified that this gave her a reasonable suspicion that Kinsella was under the influence of alcohol. This was just before the school day began and Kinsella's students were not yet in class. Beckwith could not remember if Kinsella exhibited other signs of being under the influence of alcohol or was otherwise impaired.

¶ 6    Beckwith stated that, according to Board policy, when two administrators or one administrator and one supervisor have a "reasonable and articulated belief that the employee is using alcohol or a prohibited drug, *** based on specific contemporaneous observations concerning the appearance, behavior, speech, or body odors of the employee" the administrator or supervisor must contact employee services immediately to dispatch a certified technician to perform the necessary drug or alcohol test. In compliance with this policy, Beckwith and Alstadt called employee services and requested that a certified technician perform a "reasonable suspicion" test. Beckwith and Alstadt prepared an "Administrator Report for Reasonable Suspicion Testing," which she gave to Kinsella and informed her that her failure to take a Breathalyzer test would result in her termination. Kinsella agreed to take the test. The hearing officer found that during the three hours she spent with Kinsella, Beckwith did not observe any other sign or symptom of Kinsella being impaired. Petitioner does not contest the grounds for conducting this test.

¶ 7    William Setlak, an employee of Mercy Works, is certified to administer Breathalyzer tests and has administered approximately 500 tests. Setlak testified that on May 10 he performed two Breathalyzer tests on petitioner. The first test administered at 11:32 a.m. registered a 0.056 blood-alcohol level (BAC). An automatic confirmation test administered at 11:50 a.m. registered a 0.053 blood-alcohol level. The 0.053 BAC result was recorded as the official result. Kinsella does not contest the test findings.

¶ 8    Thomas Krieger testified that for the last 12 years he has worked for the Board in dealing with employee violations of its drug and alcohol policy. The Board has a drug- and alcohol-free workplace policy and all Board policies are available to employees. Under the Board's definition, an employee "showing signs of impairment or intoxication and testing positive on a reasonable suspicion test" would be considered "under the influence." Krieger opined that an employee who arrives to work "under the influence" violates that Board policy. In his experience, "[f]or a case where an employee blows a .05 [blood-alcohol level], it's dismissal every single time."

¶ 9    On cross-examination, Krieger admitted that it is not a written policy that an employee whose Breathalyzer test registers a 0.05 or higher will be dismissed. Of the 10 or 15 cases he has been involved with where the result was 0.05 or higher, only two or three employees were teachers. Krieger testified that the Board's definition of "under the influence" includes "mental, emotional, sensory, or physical impairment" but does not include "odor of alcohol." The Board does not have a written policy that informs employees when they must stop drinking before work. Krieger testified that he has never seen a case where a teacher "blew a .05" and was not terminated.

¶ 10    Five of Kinsella's coworkers testified that on May 10, 2012 they interacted with Kinsella at school but did not smell alcohol on her breath and did not observe any signs that she was under the influence of alcohol. The hearing officer found this testimony incredible and the Board

concurred, finding these witnesses were not trained in the detection of alcohol on a person's breath.

¶ 11    Kinsella testified that on May 9, 2012, she went to dinner in Chicago. While at dinner she had three sangrias and left the restaurant at 10:45 p.m. She went to bed at around 11 p.m. at a friend's house. She woke up the next morning at 4:45 a.m. to return to her apartment and later left her residence for work sometime between 7:30 to 7:45 a.m. She had nothing to eat that morning and had had no alcoholic drinks since the prior evening. Upon arriving at school, she checked in at the main office, where she met the assistant principal. A few minutes later she went to her classroom, where she visited with four of her coworkers. Sometime between 8:40 and 8:50 a.m., principal Beckwith requested a meeting. Kinsella took a Breathalyzer test, and after the confirmation test, Beckwith removed Kinsella from the premises and the Board began discharge procedures.

¶ 12    Kinsella was charged by Chicago Public Schools' (CPS) chief executive officer with: (1) violating the CPS drug and alcohol testing policy; (2) reporting to work "under the influence" of alcohol or illegal drugs; (3) drinking, using or possessing alcoholic beverages or illegal drugs in a manner not prescribed by a physician while at work; (4) engaging in any act or conduct prohibited by Board rules; (5) violating the school rules or Board rules, policies or procedures which results in behaviors that grossly disrupt the orderly education process in the school; (6) violating Board Rule 4-4(h) prohibiting reporting to work "under the influence"; (7) violating the Board's "Drug and Alcohol Free Workplace Policy"; and (8) conduct unbecoming of a CPS employee.

¶ 13    In posthearing submissions, CPS argued that Kinsella violated the Board's alcohol-free workplace policies by reporting to work "under the influence" of alcohol and should be discharged. CPS argued that "under the influence" is considered as "showing signs of impairment or intoxication and testing positive on a reasonable suspicion test."

¶ 14    Kinsella argued, among other things, that CPS was required to prove by a preponderance of the evidence that she was "under the influence" of alcohol and that, if proved, her conduct did not constitute cause for dismissal. Kinsella argued she cannot be presumed to be impaired solely because of her Breathalyzer test result.

¶ 15    After reviewing the testimony, documentary evidence and posthearing briefs, the hearing officer recommended Kinsella's reinstatement with full back pay and benefits. The hearing officer found that principal Beckwith was justified in requiring Kinsella to take a Breathalyzer test. She found that Alstadt's and Beckwith's testimony was more credible than that of Kinsella's coworkers, who were not trained to observe signs of alcohol misuse. However, the Breathalyzer "test results and the odor of alcohol alone [did] not sufficiently confirm that [Kinsella] was under the influence or impaired." While the Board had dismissed employees during the last 12 years whose Breathalyzer tests at work registered a blood-alcohol level of 0.05 or more, the hearing officer found there was no testimony or evidence to establish why the Board presumptively considered a 0.05 blood-alcohol level to be sufficient to prove an employee is "under the influence" or impaired. Such policy has not been published or otherwise provided to teachers. The hearing officer also found that the Board does not have a zero-tolerance policy because, as the testimony established, a teacher can have a 0.05 or less blood-alcohol level and not be considered "under the influence." In conclusion, the hearing officer found that the Board did not prove by a preponderance of the evidence that Kinsella was "under the influence" of alcohol and that her conduct was not irremediable *per se*.

¶ 16    On July 24, 2013, the Board issued an opinion and order finding that the evidence was sufficient to prove the charges against Kinsella. The Board accepted the hearing officer's findings of fact that: (1) there was a reasonable basis to administer a Breathalyzer test; (2) the school administrators smelled alcohol on Kinsella's breath at school; (3) the testimony of the coworkers regarding petitioner's condition was not credible; and (4) there was no reason to doubt the accuracy of the Breathalyzer test. The Board found that Kinsella's 0.053 Breathalyzer test result was sufficient to presume Kinsella reported to work "under the influence" of alcohol and, therefore, CPS was not required to show actual physical impairment. In making this finding, the Board took judicial notice of a medical handbook to extrapolate what her blood-alcohol level might have been when she reported to work three hours before taking the Breathalyzer test. After determining that the Board had cause for dismissal, the Board then found that Kinsella's misconduct was irremediable *per se*.

¶ 17    Kinsella filed a timely appeal of the Board's final administrative decision.

¶ 18                                                    ANALYSIS

¶ 19    Pursuant to the Administrative Review Law (735 ILCS 5/3-101 (West 2010)), we review the administrative board's decision and not the decision of the hearing officer. *Lindemulder v. Board of Trustees of the Naperville Firefighters' Pension Fund*, 408 Ill. App. 3d 494, 500 (2011).

¶ 20    The appropriate standard of review that we apply depends on the questions presented. *Sartwell v. Board of Trustees of the Teachers' Retirement System*, 403 Ill. App. 3d 719, 724-25 (2010). When issues of pure law are raised, we review them *de novo. Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 369 (2002). When issues of fact are raised, we only determine whether the findings of fact are against the manifest weight of the evidence. *Kouzoukas v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 234 Ill. 2d 446, 465 (2009). When mixed questions of law and fact are raised, we review them under the clearly erroneous standard. *Swoope v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 323 Ill. App. 3d 526, 529 (2001).

¶ 21    Kinsella does not contest the basis (odor of alcohol) upon which principal Beckwith ordered the Breathalyzer test or the 0.053 test result. Instead, Kinsella challenges the Board's findings that she was "under the influence" and that her conduct was irremediable.

¶ 22    An administrative board's factual findings are considered *prima facie* true and correct unless they are against the manifest weight of the evidence. *Raitzik v. Board of Education of the City of Chicago*, 356 Ill. App. 3d 813, 823 (2005). An administrative board's decision is against the manifest weight of the evidence if the opposite conclusion is clearly evident (*Younge v. Board of Education of the City of Chicago*, 338 Ill. App. 3d 522, 530 (2003)) or when the findings are unreasonable, arbitrary, or not based on the evidence (*York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 179 (2006)).

¶ 23    The Board's decision on the legal effect of a given set of facts, such as whether Kinsella's conduct constituted a violation of the Board's rules and policies, presents a mixed question of law and fact and is reviewed under the clearly erroneous standard. *Woods v. Illinois Department of Employment Security*, 2012 IL App (1st) 101639, ¶ 19. The clearly erroneous standard "falls between a manifest weight of the evidence standard and *de novo* review, so as to give some deference to the agency's experience and expertise." *Swoope*, 323 Ill. App. 3d at 529. Under a clearly erroneous standard, the Board's conclusion will not be reversed unless,

after review of the entire record, we are left with the definite and firm conviction that a mistake has been committed. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 393 (2001).

¶ 24 Kinsella argues that the Board's finding of cause for termination was arbitrary and not based on the evidence because the Board presumed she was "under the influence" of alcohol solely for the reason that her blood-alcohol level was above 0.05, without any evidence that she had any mental, emotional, sensory or physical impairment caused by alcohol. We agree.

¶ 25 CPS charged Kinsella with reporting to work "under the influence" of alcohol in violation of its "Drug and Alcohol Free Workplace" rule that provides an employee "shall not unlawfully manufacture, distribute, possess, consume, use *or be under the influence of drugs or alcohol* on Board property." (Emphasis added.) The Board's "Drug and Alcohol Free Workplace Policy" manual states that employees are prohibited from being on Board property while "*under the influence of alcohol or unlawful drugs*" and that a violation results in dismissal. (Emphasis added.) It further defines "under the influence" as any "mental, emotional, sensory or physical impairment due to the use of drugs or alcohol." The CPS "Drug and Alcohol Free Workplace Statement," signed by all employees before commencing work, obligates employees to remain "drug and alcohol free" while at work and lists various disciplinary options including dismissal, supervision and medical treatment. The Board's "Employee Discipline and Due Process Policy" provides that "[r]eporting to work *under the influence of alcohol or drugs*" is a group 5 act of misconduct. (Emphasis added.) Thomas Krieger, the Board's 12-year employee responsible for dealing with employee alcohol and drug misuse, testified that pursuant to the Board's definition, an employee is considered "under the influence" if she shows signs of impairment or intoxication *and* tests positive on a reasonable suspicion test.

¶ 26 We apply the same rules in construing regulations of an administrative agency as we do in construing statutes. *Hoffman v. Board of Fire & Police Commissioners*, 175 Ill. App. 3d 219, 224 (1988). As such, in construing the Board's definition of "under the influence," we must give the language of the definition its plain and ordinary meaning. *Id*. at 224-25. In this the case, the Board's rule " 'must be read to reach a common-sense result.' " *Platform I Shore, LLC v. Village of Lincolnwood*, 2014 IL App (1st) 133923, ¶ 14 (quoting *People v. Chicago Title & Trust Co.*, 75 Ill. 2d 479, 493 (1979)). An administrative agency's interpretation of its own rules will not be overruled unless it is clearly erroneous, arbitrary or unreasonable. *Brown v. Chicago Park District*, 296 Ill. App. 3d 867, 874 (1998).

¶ 27 Rule 4-4(h) and the above-cited policy statements are not ambiguous and, when read together, they reflect a mechanism for disciplinary action where there is reasonable suspicion that an employee is "under the influence of alcohol" while on school property and not simply where the employee has alcohol in her system. While the odor of alcohol provides a basis for requiring an employee to submit to testing, the rules clearly state that an additional factor must exist before disciplinary action is warranted: the employee must be under the influence of drugs or alcohol. Otherwise, the term "under the influence" in Rule 4-4(h) would be superfluous and would have no meaning. For example, if only the odor of alcohol justified an authorized test and the test result was positive for the presence of alcohol, there would be no need for an additional finding that the employee was impaired. Further, the Board's manual dealing with "Reasonable Suspicion Drug and Alcohol Testing of Employees" specifically states "under the influence is any mental, emotional, sensory or physical impairment due to the

use of drugs or alcohol." This provision must have meaning. The written charge against Kinsella specified that she was "in the presence of students, staff, parents and administrators *while under the influence of alcohol.*" (Emphasis added.) As the hearing officer correctly found, there was no evidence that Kinsella exhibited in any way that she had any mental, emotional, sensory or physical impairment caused by alcohol on the day in question. There is a complete absence of proof in this regard.

¶ 28    The Board contends that the above-cited rules and policy statements establish that it has a zero-tolerance alcohol workplace policy, which a plain reading of these same rules and policy statements clearly does not demonstrate. Each rule or policy statement specifically states that being "under the influence" is the prohibited conduct warranting disciplinary action. We also note that in rejecting the hearing officer's conclusion that the evidence failed to meet the preponderance standard of proof to establish Kinsella was under the influence, the Board, relying on the same rules set out above, argues that it is not required to prove Kinsella was under the influence because of its "zero tolerance policy." Confusingly, the Board argues that "while the Board has a zero tolerance policy, this does not mean that it seeks the dismissal for every single employee who tests positive, *i.e.*, above .00 BAC." Stated differently: the Board does not have a "zero tolerance" policy but it makes the claim in a futile attempt to justify its order.

¶ 29    Further, the Board seeks to persuade us by arguing that "a positive [B]reathalyzer test result, taken during the workday, is sufficient evidence to establish that an employee is under the influence, and subject to dismissal." It argues that "this standard does not prohibit employees from drinking any alcohol when they are not working; instead it reasonably demands that their mind and bodies are not affected by alcohol when they take charge of their classes." Demanding that an employee's mind and body are not affected by alcohol is not an argument that supports the claimed existence of a zero-tolerance policy. It is the practical and legal equivalent to the definition of "under the influence" contained in Rule 4-4(h): "any mental, emotional, sensory or physical impairment due to the use of drugs or alcohol." By acknowledging the Board does not prohibit employees drinking alcohol "when they are not working" (and presumably not on Board property), the Board is affirming that something more than the odor of alcohol or a positive test result is required to warrant discipline. This statement is an acknowledgement of the common understanding that consumed alcohol (a legal substance) is not immediately expelled after consumption and not all alcohol consumption results in impairment. It also supports our finding that under Rule 4-4(h) a mental, emotional, sensory or physical impairment due to alcohol or drugs must be established by a preponderance of the evidence to sustain a disciplinary action. The Board's attempt to justify its termination order by an unwritten redefinition of the unambiguous written rules and policies contained in the record fails. In short, if the Board has a zero-tolerance policy it finds no support in the evidentiary record.

¶ 30    Citing its "Employee Discipline and Due Process Policy," the Board acknowledges that it defines "under the influence" as "any mental, emotional, sensory or physical impairment due to the use of drugs or alcohol." Nonetheless, it persists in the position that it is correct in finding that Kinsella was "under the influence" because of her 0.053 Breathalyzer test result. This test result standing alone is insufficient to find Kinsella was under the influence of alcohol. Rule 4-4(h) does not include a positive Breathalyzer test result as a factor within the definition of "under the influence." The plain language of the rule requires evidence of

impairment, not a positive test result. The Board's finding was not based on any evidence of impairment as required by the rules. Therefore, we find that there is no evidence in the record to support the Board's order.

¶ 31 In finding that the Board's order of termination is not supported by the evidence we also agree with Kinsella that the Board improperly took notice of a medical handbook's suggested calculations to extrapolate that Kinsella's blood-alcohol content was over 0.08 when she reported to work three hours before she took the Breathalyzer test. While evidence regarding retrograde extrapolation is admissible, it must be presented with a proper foundation and testified to by a qualified expert. *People v. Ikerman*, 2012 IL App (5th) 110299, ¶ 38. In this case, the handbook was not offered by any party at the administrative hearing and there was no expert testimony to establish its reliability, admissibility and relevance to this case. *Id*. In addition, Kinsella was not given the opportunity to confront this material to either contest, agree with or discredit it. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 95 (1992) (fair proceedings before administrative agencies include the opportunity to be heard, the right to cross-examine and impartiality in ruling upon the evidence). The Board improperly relied on the handbook and made calculations adverse to Kinsella that were not part of the hearing and used these calculations in determining that Kinsella's blood-alcohol level was anything other than 0.053 in finding that she was "under the influence."

¶ 32 This appeal deals with the termination of a teacher with no history of adverse disciplinary action. Although broad discretion is accorded an administrative agency to determine what constitutes a proper cause for dismissal, it is essential to the validity of such a disciplinary action that it be reasonable and not be applied in an arbitrary manner. *Keen v. Police Board*, 73 Ill. App. 3d 65, 74 (1979). Here, Kinsella's blood-alcohol level, without any evidence of impairment due to alcohol, is not sufficient to prove she was under the influence of alcohol by a preponderance of the evidence as required under Board rules. The record is clear that for an employee to be considered "under the influence" she must show signs of impairment. The Board's finding was not based on any evidence of impairment, but solely on Kinsella's Breathalyzer test result. Therefore, based on the evidence presented, the Board's decision that Kinsella was "under the influence" and that her conduct was cause for dismissal is arbitrary and not supported by the evidence.

¶ 33                                                    CONCLUSION

¶ 34 For the foregoing reasons, we reverse the final decision of the Board.

¶ 35 Reversed.